UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRUCE BENTON,

    Plaintiff,

v.

EL DORADO COUNTY SHERIFF'S DEPARTMENT, et al.,

    Defendants.

No. 2:15-cv-0772 AC P

ORDER

I.    Introduction

Plaintiff is a former state prisoner at Valley State Prison (VSP),[1] apparently now incarcerated in the El Dorado County Jail (EDCJ) in Placerville, California, who is challenging the conditions of his prior confinement at the EDCJ.[2] Plaintiff proceeds pro se with an amended

---

[1] When plaintiff filed the operative First Amended Complaint and request to proceed in forma pauperis, he was incarcerated at VSP. However, review of the Inmate Locator website operated by the California Department of Corrections and Rehabilitation (CDCR) indicates that plaintiff is no longer incarcerated in a CDCR facility. See http://inmatelocator.cdcr.ca.gov/search.aspx. See also Fed. R. Evid. 201 (court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned).

[2] Review of the EDCJ Inmate Information website indicates that a Bruce Benton was received in custody on July 3, 2017, for violation of parole. Because plaintiff has not filed a change of address since his incarceration at VSP, and in an effort to accord plaintiff the opportunity to proceed with this action, the court will assume this is the same Bruce Benton and proceed accordingly. See http://edcapps.edcgov.us/sheriff/jail/jail_datalist.asp?start=21

1

civil rights complaint filed pursuant to 42 U.S.C. § 1983,[3] and a request for leave to proceed in forma pauperis filed pursuant to 28 U.S.C. § 1915.

Plaintiff has consented to the jurisdiction of the undersigned Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c) and Local Rule 305(a). See ECF No. 3. For the reasons that follow, a decision on plaintiff's request to proceed in forma pauperis is deferred, and plaintiff is accorded the option of proceeding on his First Amended Complaint (FAC), or filing a proposed Second Amended Complaint (SAC).

II. In Forma Pauperis Application

While incarcerated at VSP. plaintiff submitted an affidavit and prison trust account statement that make the showing required by 28 U.S.C. § 1915(a). See ECF No. 11. However, because the court is not certain of plaintiff's current address, see fns.1&2, supra, it is unable to direct the appropriate agency to make deductions from plaintiff's trust account pursuant to 28 U.S.C. § 1915(b). Should plaintiff receive a copy of this order, and file a new request to proceed in forma pauperis completed in pertinent part by staff at his current place of incarceration, the court will issue the appropriate orders at that time. Should this action be dismissed, plaintiff's request to proceed in forma pauperis will be denied as moot.

III. Legal Standards for Screening Prisoner Civil Rights Complaint

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

///

///

---

[3] Plaintiff filed his original complaint with three other plaintiffs. See ECF No. 1. The court severed these actions, ECF No. 5, but found them related, ECF No. 6. Two plaintiffs declined to pursue their separate actions, which were each dismissed without prejudice. See Case No. 2:15-cv-0773 AC P (Anderson), and Case No. 2:15-cv-0774 AC P (Suddeth). Plaintiff Spears continues to pursue his separate action. See Case No. 2:15-cv-0165 AC P.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).

Rule 8 of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly at 555). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" Iqbal at 678 (quoting Twombly at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly at 557).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

IV. Screening of Plaintiff's First Amended Complaint

Plaintiff's First Amended Complaint (FAC) does not state whether plaintiff was incarcerated in the El Dorado County Jail (EDCJ) as a pretrial detainee or as a state inmate. Nevertheless, while a pretrial detainee's right to be free from punishment is grounded in the Fourteenth Amendment's Due Process Clause, Eighth Amendment jurisprudence guides the court's analysis. See e.g. Pierce v. County of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008); Castro v. County of Los Angeles, 797 F.3d 654, 664 (9th Cir. 2015).

3

A.  Plaintiff's Allegations

The FAC makes two potentially cognizable claims for relief under the Eighth Amendment: (1) failure to protect plaintiff from physical harm, and (2) deliberate indifference to plaintiff's serious medical needs. The contours of these claims are discussed below. The FAC identifies only one proper defendant, the El Dorado County Sheriff's Department (Department). Plaintiff is informed how to clarify his claims and to identify other appropriate defendants in a Second Amended Complaint (SAC).

The allegations of the FAC initially explain that the EDCJ separately houses general population (GP) inmates and protective custody (PC) inmates, because "all custody staff is aware" that GP inmates "always attack" PC inmates. ECF No. 12 at 7. GP inmates are housed in "Dorm 1" while PC inmates are housed in "C-Pod;" these housing units are on the same floor.

On August 28, 2014, in the early evening, GP inmates attacked PC inmates as a result of the following circumstances. While GP inmates were both on the yard and in Dorm 1 (about "half and half"), the tower officer (defendant "Doe 1") announced that PC inmates were to line up for laundry exchange at the front door area of C-Pod. Plaintiff avers that the announcement was made too early, requiring PC inmates to wait for about 45 minutes at the front door area of C-Pod. When PC inmate Greeson was returning from the medical/visiting area, defendant Doe 1 "popped Dorm 1 and the yard's door," allowing GP inmates to rush and attack Greeson. ECF No. 12 at 8. "Inmate Greeson was about 3-4 feet from C-Pod door when he was attacked by 10-15 inmates and when C-Pod door was finally popped General Population inmates rushed C-Pod's door and held it open to enter the Protective Custody Pod and attack the inmates." Id.

Plaintiff alleges that "[t]he doors to Dorm 1 and the yard door were popped separately, showing a[n] intentional act (when they knew a PC inmate was on the floor)." Id. at 9. "The tower officer [Doe 1] knew a PC inmate was on the floor. He cleared him to enter the floor when the upper floor tower and floor officers notified Doe 1 a PC inmate was entering." Id. at 8. Plaintiff alleges that the other officers working on the unit floor at the time of the incident, identified as "Does 2, 3, and 4," like Doe 1, knew that PC inmate Greeson was entering the unit floor but failed to prevent the incident. Id. at 3, 9.

4

Plaintiff Benton alleges that he was mailing a letter at the C-Pod door when this incident occurred. He alleges that he was attacked by 3 to 5 GP inmates at the door and "pulled out of C-Pod." Id. Plaintiff alleges that he suffered the following injuries: "broken tooth, head trauma, neck trauma, back trauma, elbow trauma, tendon and ligament trauma, lacerations in the mouth." Id. at 11. Plaintiff obtained initial medical treatment but "put in many requests for medical follow-ups of his injuries and did not receive proper medical treatment." Id. Plaintiff suffered "nightmares [and] PTSD and was referred by the Sergeant for mental health issues arising from the incident [when] he was violently attacked." Id.

Plaintiff alleges generally that "Does 1-4 repeatedly put PC inmates' lifes [sic] at risk by their pattern of setting up PC inmates to be attacked." Id. at 10. Plaintiff alleges that PC inmates are "usually escorted" but in this instance inmate Greeson was not escorted. Id. at 9. Plaintiff alleges that "[t]his is a pattern of officers knowingly making the PC inmates walk on the floor by themselves, without a[n] officer escort, so when they walk past the GP-pods, the GP-pod doors can be opened so the PC inmates can be attacked on numerous occasions. This has only happened to PC inmates and no others . . . [and has] happened in the past many times." Id. at 9-10. (with minor edits).

Plaintiff alleges that this incident reflects a policy, custom and/or practice of the Department and its officers: "After repeated events of this type the Sheriff's Dept. and Sheriff Does have never changed the policy and procedure to protect the PC inmates [and] . . . never trained or retrained the officers to better protect PC inmates in C-Pod entering the floors. The jail officers have developed a custom and practice that has repeatedly been done that allows PC inmates in C-Pod to be attacked by GP inmates." Id. at 10 (with minor edits).

B. Defendants

- El Dorado County Sheriff's Department: To allege a Section 1983 claim against a local governmental entity such as the El Dorado County Sheriff's Department, plaintiff must allege a constitutional deprivation and that a policy, custom, or practice of the Department was the "moving force" behind the constitutional deprivation. See Monell v. Department of Social Services, 436 U.S. 658, 694-95 (1978); Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950,

957 (9th Cir. 2008). The FAC alleges in general terms, but adequately for purposes of screening, that plaintiff suffered injuries as a result of a policy, custom or practice of defendant Department that failed to protect plaintiff, a PC inmate, from physical harm by GP inmates on August 28, 2014.

- Doe Defendants: Plaintiff may not pursue claims against "Doe" defendants. The use of "Doe" defendants is disfavored in the Ninth Circuit. See Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). However, when the identity of defendants cannot be known prior to the filing of a complaint, the plaintiff should be given an opportunity to identify them. Id. Failure to afford such opportunity is error. Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999). If plaintiff is able to identify the officers on duty when the subject incident occurred on August 28, 2014, he may name them in a SAC and make more precise allegations against each individual defendant (each officer's specific responsibilities and alleged failure to discharge those responsibilities). If plaintiff later learns the identity of a Doe defendant through discovery or by other means, he may move to file a further amended complaint to add the newly-named defendant. Brass v. County of Los Angeles, 328 F.3d 1192, 1195-98 (9th Cir. 2003). Absent specific allegations against specifically identified defendants, the Doe defendants will be dismissed from this action.

- Individual Officers: In naming individual defendants, plaintiff is informed that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978); see also Leer v. Murphy, 844 F.2d 628, 633 (9th Cir.1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a specific defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362, 371 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th

///

Cir. 1980). Therefore, allegations against specific defendants must reflect such linkage or causation.

### C. Substantive Claims

For the following reasons, the court finds that the FAC states a generally cognizable Eighth Amendment claim against the Department under a "failure to protect" theory, but not one for "deliberate indifference to plaintiff's serious medical needs." Plaintiff may file an SAC that includes both claims:

- Failure to Protect: Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). This responsibility requires prison officials to protect prisoners from injury by other prisoners. Farmer v. Brennan, 511 U.S. 825, 833-34 (1994). Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," evidence must exist to show the defendant acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotation marks, emphasis and citations omitted). A "failure to protect" claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842 (citations omitted). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. (citations omitted).

- Deliberate Indifference to Serious Medical Needs:

Plaintiff concedes that he "saw medical" that "documented" his injuries, ECF No. 12 at 11, implying that he received immediate medical care following the incident. Plaintiff complains that thereafter he "put in many requests for medical follow-ups of his injuries and did not receive

7

proper medical treatment." Id. Plaintiff is informed of the following requirements for stating a cognizable claim based on the failure of medical staff to adequately treat his initial injuries and/or his requests for follow-up medical care. A cognizable claim must link the allegedly unconstitutional conduct with specific defendants; the Department is not an appropriate defendant to maintain this claim.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (internal citations, punctuation and quotation marks omitted). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere with medical treatment.'" Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)).

"In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong ... is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation marks omitted); accord, Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Lemire v. CDCR, 726 F.3d 1062, 1081 (9th Cir. 2013). As in the "failure to protect" context, a deliberate indifference claim must plausibly allege that a prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

///

V. Option to File Amended Complaint

If plaintiff submits a new application to proceed in forma pauperis on the form provided with this order, he may choose to proceed on his FAC, on a "failure to protect" claim against the El Dorado County Sheriff's Department, <u>OR</u> file a SAC that attempts to add cognizable "failure to protect" and "deliberate indifference to serious medical needs" claims against specifically identified defendants.

Subject to the legal standards set forth herein, a SAC must be on the form provided herewith, labeled "Second Amended Complaint," and provide the case number assigned this case. The SAC must be complete in itself without reference to any prior pleading. <u>See</u> Local Rule 15-220; <u>Loux v. Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967). If plaintiff files a SAC, the FAC will be superseded. The SAC will be screened by the court pursuant to 28 U.S.C. § 1915A.

VI. Summary

The court will attempt to serve this order on you at the El Dorado County Jail in Placerville. If you are not the Bruce Benton who commenced this action, you may so inform the court or simply decline to respond.

If you are the Bruce Benton who commenced this action, you may proceed with your First Amended Complaint (FAC) provided you confirm your current address and return a newly completed in forma pauperis application and a Notice of Selection, which are included with this order. If you choose to proceed on your FAC, you will proceed only on your "failure to protect" claim against the El Dorado County Sheriff's Department.

If you choose to proceed on a proposed Second Amended Complaint (SAC), you must send it to the court with your in forma pauperis application and Notice of Selection. In a proposed SAC, you may attempt to add "failure to protect" claims against specific (not Doe) officers, and "deliberate indifference to serious medical needs" claims against specific (not Doe) medical staff and/or correctional officers.

Failure to timely respond to this order will result in the dismissal of this action without prejudice.

///

VI. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff may proceed on his First Amended Complaint (FAC) against the El Dorado County Sheriff's Department; or may file a proposed Second Amended Complaint (SAC) that attempts to add additional claims against additional defendants.

2. Within thirty (30) days after service of this order, plaintiff shall:

    a. Complete and return the attached in forma pauperis application;

    b. Complete and return the attached Notice of Election, indicating whether plaintiff intends to proceed on his FAC, or a proposed SAC;

    c. If plaintiff intends to proceed on a proposed SAC, he shall include his proposed SAC with his other submissions.

3. Should plaintiff fail to timely respond to this order, this action will be dismissed without prejudice.

4. The Clerk of Court is directed to provisionally change plaintiff's address on the docket to the following: Bruce Benton, Inmate, El Dorado County Jail, 300 Forni Road, Placerville, CA 95667.

5. The Clerk of Court is directed to send plaintiff: (a) a copy of this order; (b) a new application to proceed in forma pauperis; (c) a copy of plaintiff's FAC, ECF No. 12 (14 pp.); and (d) a copy of the form complaint used by prisoners in this district to pursue a civil rights action.

SO ORDERED.

DATED: September 22, 2017.

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRUCE BENTON,

        Plaintiff,

   v.

EL DORADO COUNTY SHERIFF'S DEPARTMENT, et al.,

        Defendants.

No. 2:15-cv-0772 AC P

<u>NOTICE OF ELECTION</u>

    In compliance with the court's order filed _____, plaintiff submits:

    \_\_\_\_\_ A newly completed application to proceed in forma pauperis that bears plaintiff's current address of record.

In addition, plaintiff elects to:

    \_\_\_\_\_ Proceed on his First Amended Complaint (FAC) against defendant El Dorado County Sheriff's Department;

    <u>OR</u>

    \_\_\_\_\_ Proceed on a Second Amended Complaint (SAC), submitted herewith.

_____        _____
Date                                        Plaintiff